# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

**THOMAS DONNELLAN,**

      Plaintiff,

v.                                                          2:22-cv-542-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.

---

## ORDER

Plaintiff Thomas Donnellan seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 12),[1] Donnellan filed an opening brief (Doc. 17), the Commissioner responded (Doc. 20), and Donnellan replied (Doc. 23). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.  Eligibility for Disability Benefits and the Administration's Decision

### A.  Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On August 11, 2020, Donnellan applied for disability insurance benefits and supplemental security income. (Tr. 109-10, 305-16). He asserted an onset date of June 3, 2020, alleging disability due to the following: attention deficit hyperactivity disorder ("ADHD"); anxiety; panic attacks; post-traumatic stress disorder ("PTSD"); breathing problems; multiple cracked ribs; and a fractured left wrist. (Tr.

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

112, 332). As of the alleged onset date, Donnellan was 43 years old and had completed one year of college. (Tr. 49-50, 111, 328, 333). Donnellan previously worked as a chef, a food delivery driver, and a stocker at a department store. (Tr. 333).

On behalf of the administration, a state agency[5] reviewed and denied Donnellan's applications initially on October 28, 2020, and upon reconsideration on March 18, 2021. (Tr. 83-108, 111-46, 153-72). At Donnellan's request, Administrative Law Judge (ALJ) Mario G. Silva held a hearing on August 19, 2021. (Tr. 40-82). On November 24, 2021, the ALJ issued an unfavorable decision finding Donnellan not disabled. (Tr. 19-39). Donnellan's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Donnellan then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

> relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Donnellan had not engaged in substantial gainful activity since June 3, 2020, the alleged onset date. (Tr. 21). At step two, the ALJ characterized Donnellan's severe impairments as: fractures in cervical, thoracic, and lumbar spines; "left wrist fracture status-post ORIF"; rib fractures; anxiety; and PTSD. (Tr. 21). At step three, the ALJ determined Donnellan did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 22).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant (right hand dominant) has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift up to 10 pounds with the left non-dominant extremity occasionally; lift/carry up to 20 pounds occasionally and up to 10 pounds frequently with

the right upper extremity; stand or walk for about six hours; and sit up to six hours for a combined total of an eight-hour workday with normal breaks. The claimant should never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently balance; and occasionally stoop, kneel, crouch, and crawling. The claimant can perform occasional overhead reaching with bilateral upper extremities; no more than occasional handling with the left non-dominant upper extremity; and frequent fingering with the left non-dominant upper extremity. The claimant should never be exposed to unprotected heights. The claimant is able to understand, remember, and carry out simple instructions or tasks. The claimant is able to make judgments on work related decisions with simple instructions or tasks in such work environment. The individual is able to interact appropriately with others in such work environment. The individual is able to respond and adapt to routine work situations and to occasional changes in a work setting without special supervision with simple instructions or tasks.

(Tr. 25). Consequently, the ALJ found Donnellan unable to perform any past relevant work. (Tr. 31). At step five, the ALJ found Donnellan could perform other work that exists in significant numbers in the national economy. (Tr. 31). In support, a vocational expert testified that an individual of Donnellan's age, education, work experience, and RFC can perform the following representative occupations:

- *Decorating Inspector,* DOT #579.687-014), light; SVP 2, with 4,000 jobs in the national economy;

- *Usher,* DOT #344.677-014, light; SVP 2, with 50,000 jobs in the national economy; and

- *Ticket Taker,* DOT #344.667-010, light; SVP 2, with 40,000 jobs in the national economy.

(Tr. 32).[6] Thus, for purposes of the Act, the ALJ concluded Donnellan was not

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled.

disabled from June 3, 2020, the alleged onset date, through November 24, 2021, the date of the decision. (Tr. 33).

## II.    Analysis

Donnellan's appeal presents three issues for review:

(1)  whether the ALJ committed reversible error by arriving at an RFC that is *more restrictive* than that which was suggested by the state-agency consultants;

(2)  whether the ALJ failed to ensure the record was fully developed; and

(3)  whether the ALJ committed reversible error by omitting a discussion about statements ascribed to a medical source in an application for a state-issued, disabled-parking permit.

### A.    Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is

---

The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

## B.      The ALJ properly assessed the RFC

It is axiomatic that the responsibility for making the residual functional capacity determination rests with the ALJ. *See* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."). "An RFC determination is an assessment, based on all relevant evidence, of a claimant's

remaining ability to do work despite his impairments."[7] *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).

In this case, the RFC provides that Donnellan could perform a range of light work with additional manipulative, postural, environmental, and mental limitations. (Tr. 25). In assessing the RFC, the ALJ considered objective medical records, plaintiff's reports of symptoms to medical providers, radiographic imaging, and medical findings from state-agency-medical-consultants. (Tr. 25-31). But when assessing the state-agency medical findings, the ALJ noted:

> The undersigned has considered the disability determination explanations from the State Agency medical consultants, wherein they opined the full range of light exertion. The opinion is partially persuasive because it is supported by the medical evidence of record with respect to the dominant right upper extremity only. The medical evidence of record supports ongoing residuals using the left non-dominant upper extremity as evidence by imaging and findings on exams. Accordingly, limitations regarding the left non-dominant upper extremity are warranted in terms of reduced lifting and carrying, handling, and fingering. Additional non-exertional limitations are also supported by the medical evidence of record with respect to postural activities, reaching, and unprotected height. The State Agency psychological consultants found no severe mental impairments and no more than mild limitations. This finding is not persuasive, as they did not consider pain in combination with mental symptoms, which supports a limitation of simple instructions or tasks. (Ex. 1A, 2A, 5A, 6A).

(Doc. 30). While Donnellan agrees with the ALJ's assessment of the state-agency-

---

[7] *See Davison v. Astrue*, 370 F. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) ("An ALJ makes an RFC determination by considering the claimant's ability to sit, stand, walk, lift, carry, push, pull, stoop, crouch, and reach."); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . .").

medical-consultants, he argues that by assessing a *more restrictive* RFC than that proffered by the consultants, the ALJ impermissibly "played doctor" because he crafted an RFC determination from his own lay person interpretation of the raw medical data, resulting in legal error. (Doc. 17 at 11-12). The court disagrees.

"The assessment of a claimant's RFC is within the exclusive province of the ALJ." *Wolff v. Comm'r of Soc. Sec.*, No. 2:22-cv-177-SPC-NPM, 2023 WL 1971935, *6 (M.D. Fla. Jan. 27, 2023), *report and recommendation adopted*, 2023 WL 1967586 (Feb. 13, 2023) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.")); *see also Jones v. Comm'r of Soc. Sec.*, No. 6:15-cv-50-Orl-DAB, 2016 U.S. Dist. LEXIS 21802, *7 (M.D. Fla. Feb. 23, 2016) (rejecting the plaintiff's contention that an RFC assessment must be based on a medical opinion). Indeed, a requirement that an ALJ's RFC determination must be based on a physician's opinion would "confer upon the physician the authority to determine the RFC, which would abdicate the Commissioner's statutory responsibility to determine whether an individual is disabled." *Driggers v. Astrue*, No. 1:12-cv-00272-LSC, 2012 WL 4478963, *4 (N.D. Ala. Sept. 20, 2012). So an ALJ does not impermissibly assume the role of a doctor by viewing the record evidence as a whole and making an RFC determination. *See*

*Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."); *see also Kelsey v. Saul*, No. 1:20-cv-133-CAS, 2021 WL 602841, *9 (N.D. Fla. Feb. 16, 2021) (rejecting plaintiff's argument that the ALJ improperly "played doctor" by formulating an RFC without any medical opinions).

Furthermore, substantial evidence supports the ALJ's RFC determination. *See Ricks v. Astrue*, 3:10-cv-975-TEM, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (citation omitted) (For the RFC assessment to be supported by substantial evidence, it must only be shown that the ALJ has "provide[d] a sufficient rationale to link" substantial record evidence "to the legal conclusions reached."). With respect to the physical limitations,[8] the ALJ considered Donnellan's testimony that in early June 2020, he fell off a ladder and fractured cervical, thoracic, and lumbar vertebrae, as well as his left ribs and left wrist. (Tr. 26, 52-53, 123-40). Following surgical intervention, Donnellan's left wrist healed but he reported still having problems using his hand for lifting and carrying items and used his right hand to assist. (Tr. 26, 53-54). Donnellan could open a door with his left hand but could not open jars.

---

[8] In addition to Donnellan's testimony, the ALJ considered medical records from June 4, 2020 through August 31, 2021, that included hospital, orthopedic, pain-management, and physical-therapy records as well as MRI and x-ray reports. (Tr. 26-28). Some of these records post-date the state agency's review.

(Tr. 26, 56). He could pick up small items and light items with his left hand. (Tr. 26, 56-57). The fractures in Donnellan's spine also healed, however, he reported continuing pain that burns, aches, and is sharp.[9] (Tr. 26).

The ALJ also considered state-agency-medical-consultant Dr. John Prairie's opinion that Donnellan was capable of: lifting and/or carrying twenty pounds on an occasional basis and ten pounds on a frequent basis; sitting for approximately six hours in an eight-hour day; and standing/walking for approximately six hours within an eight-hour day. (Tr. 30, 105). Dr. Prairie opined that Donnellan had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 106). On March 16, 2021, Dr. Thomas Bixler affirmed Dr. Prairie's initial assessment. (Tr 125).   But as set forth above, the ALJ found their opinions only "partially persuasive" with respect to the lack of limitations concerning the right upper extremity. (Tr. 30).

Specific to Donnellan's left wrist, the ALJ observed that he initially

---

[9] After the ALJ considered all the evidence, he found that Donnellan's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but Donnellan's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence or other evidence in the record. (Tr. 29). Overall, the ALJ found that despite Donnellan's inconsistent symptoms, the medical evidence showed ongoing residuals of the neck and left wrist, but that any alleged disabling back pain, or limitations in standing, walking, or sitting were not supported in light of normal imaging, normal gait/station, intact motor strength in all four extremities, and no sensory or reflex deficits of the lower extremities. (Tr. 29). Thus, the ALJ concluded that the light residual functional capacity with additional limitations more than accounted for Donnellan's complaints. (Tr. 29-30).

experienced stiffness, limited flexion, extension, supination, and pronation, and continued pain upon movement. (Tr. 27, 458). However, Donnellan's pain decreased after ten physical therapy sessions, and he had full finger range of motion, no paresthesia in the fingers, and Tinel's was negative at the wrist. (Tr. 28, 1439). But over time, the pain in Donnellan's left wrist persisted despite normal imaging, which caused him to modify certain movements. (Tr. 26-27, 1327, 1424). And the last x-ray of Donnellan's left wrist showed a questionable screw penetration along the dorsal aspect of the radiocarpal joint compared to initial x-rays. (Tr. 28, 1439).

In regard to Donnellan's spine, the record shows he consistently reported pain in his neck and back, despite all of his fractures being healed. (Tr. 26-27, 442-43, 510, 513-14, 1379-81). Donnellan also underwent physical therapy and spinal injections, including cervical-medial-branch-nerve-block injections, but they provided only temporary relief and he continued to complain of neck pain with intermittent radiation to the left upper extremity and scapular region. (Tr. 27-28, 704, 707, 1295, 1329, 1454-55, 1457). A trial of epidural steroid injections was recommended but Donnellan stated he wanted to undergo a neurosurgery consultation before having any other injections. (Tr. 28, 1457, 1463). Shortly after Donnellan's fall off the ladder, he was prescribed Gabapentin, Percocet, and Robaxin for pain management and continued taking the medications despite being told he would "need to wean" as he healed. (Tr. 27, 513-14, 720). Finally, Donnellan

demonstrated continued fear and guarding with some reaching and strength tasks. (Tr. 27, 707).

The ALJ also fully considered the record evidence concerning Donnellan's mental impairments, including reports and diagnoses of anxiety, depression, PTSD, and insomnia.[10] (Tr. 28-29, 679, 688, 719, 722, 1300). Examination records often described Donnellan as anxious, having trouble sleeping, experiencing night terrors, being depressed, and having decreased motivation and energy. (Tr. 510, 676, 688, 790, 1289, 1351). Nevertheless, Donnellan reported that his mental symptoms had improved and continued to do so with psychiatric therapy. (Tr. 1289-90, 1312, 1321, 1325).

Along with the records, the ALJ reviewed state-agency-psychological-consultant Dr. Pauline Hightower's opinion that Donnellan suffered from medically determinable impairments of depressive, bipolar, and related disorders, as well as anxiety and obsessive-compulsive disorders. (Tr. 30, 102). Dr. Hightower further opined that Donnellan had only mild limitations in: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 103). Overall, Dr. Hightower found Donnellan's mental impairments were non-severe, and opined no

---

[10] The ALJ reviewed Donnellan's mental health records from July 7, 2020 through July 19, 2021; some of which post-date the state agency's review. (Tr. 28-29).

functional limitations resulting from his mental impairments, which was reaffirmed by Dr. James G. Brown. (Tr. 102-104, 119-121). However, the ALJ ultimately found that neither opinion was persuasive due to their failure to consider Donnellan's pain in combination with mental symptoms, which he found supported a limitation of simple instructions or tasks. (Tr 30).

This is just a sample of the record evidence that supports the ALJ's RFC determination, particularly with respect to manipulative, postural, environmental, and mental limitations. The ALJ considered Donnellan's condition as a whole, the RFC determination is supported by substantial evidence, and there is no reversible error in the ALJ's arrival at a *more restrictive* RFC than that suggested by the state-agency consultants.

**C.    The ALJ satisfied his obligation to develop a full and fair record.**

As Donnellan correctly states, an ALJ has an obligation to develop a full and fair record. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). But Donnellan turns this notion on its head when he suggests that practitioners create gaps in the record when they do not find functional limitations. (Doc. 17 at 13, 18-19). This contention is counterfactual and illogical. Even though the ALJ found the state-agency, medical-consultant opinions to be either partially persuasive or lacking any persuasive value (because he found—in Donnellan's favor—that they were not restrictive enough), Donnellan has made no attempt to

show the existence of any prejudicial gap in the record therefrom. And an ALJ is not obliged to order a consultative examination when, like here, the record contains sufficient evidence to support a determination. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *see also* 20 C.F.R. § 404.1519a. Thus, Donnellan's argument is meritless.

### D. The ALJ's omitting a discussion about statements ascribed to a medical source in an application for a state-issued, disabled-parking permit does not warrant remand.

On Donnellan's behalf, APRN Amy Frantz[11] completed a January 13, 2021 application for a disabled-person-parking permit, which is a checkbox form supplied by the Florida Department of Highway Safety and Motor Vehicles. (Tr. 1426). In the application, Frantz checked a box for a "Temporary Permit" to certify that Donnellan "is a person with a *temporary* disability (*six months or less*) that limits or impairs his ability to walk …." (Tr. 1426) (emphasis added). And to supply a basis for Donellan's temporary disability, Frantz checked another box that states:

> Inability to walk without the use of or assistance from a brace, cane, crutch, prosthetic device, or other assistive device, or without assistance of another person. If the assistive device significantly restores the person's ability to walk to the extent that the person can walk without severe limitation, the person is not eligible for the exemption parking permit.

(Tr. 1426).

---

[11] Given their post-graduate education and experience, as well as their board certification, advanced practice registered nurses may generally diagnose illnesses, order tests, and prescribe medications.

The ALJ's decision makes no mention of this application. Donnellan argues this constitutes reversible error. He posits that Frantz offered medical opinions by checking these two boxes on the DMV form, and that the ALJ improperly failed to explain the extent to which he found them persuasive. (Doc. 17 at 22-24).

A medical opinion is a statement from a medical source about what the claimant can still do despite any impairments and whether the claimant has impairment-related limitations or restrictions in the abilities to perform the demands of work or adapt to conditions of work. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). But not all impairments are germane to the analysis. Rather, unless an impairment is "expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909. The administration calls this "the duration requirement." *Id*. Thus, an ALJ need not discuss an opined limitation unless it was expected to last a year or more.

And here, to the extent the statements ascribed to Frantz—about a temporary disability expected to last six months or less—constitute medical opinions, the ALJ was not required to consider them because they did not satisfy the duration requirement. *See Williams v. Astrue*, No. CV-11-0014-CI, 2012 WL 5361038, at *6 (E.D. Wash. Oct. 31, 2012) (a six-month limitation offered in support of an application for a temporary parking permit does "not meet the duration requirement and is not sufficient to establish a disability under the Social Security Act"); *Stover*

*v. Saul*, No. No. 18-cv-00404-MJR, 2020 WL 897411, *5 (W.D.N.Y. Feb. 25, 2020) (same).[12]

Even when medical sources sign applications for parking permits that would be permanent in nature, courts routinely find that ALJs may disregard the preprinted statements therein. First, any statements that the applicant is "disabled" are "inherently neither valuable nor persuasive" because whether the claimant is disabled for purposes of the Act is a decision that lies within the exclusive province of the administration. *See* 20 C.F.R. §§ 404.150b(c)(3)(i), 416.920b(c)(3)(i); *see also Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (disability parking placard proves nothing because the disability standard is not the same); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (handicap parking sticker adds nothing to a finding of disability); *Sims v. Astrue*, No. CIV.A. 12-469-N, 2013 WL 372151, at *4 (S.D. Ala. Jan. 30, 2013) (issuance of handicapped parking permit "would not make a difference in the court's analysis").

And second, the preprinted statements in these DMV forms are routinely vague and conclusory and therefore immaterial. The form at issue is a case in point.

---

[12] For this reason, Donnellan's authorities are inapposite. He cites *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729 (11th Cir. 2011), but in that case the physician applied for a five-year permit based on a long-term disability. *See Dempsey v. Astrue*, No. 1:09cv790-SRW, 2011 WL 310253, at *4 (M.D. Ala. Jan. 28, 2011). And he cites *Gjertsen v. Comm'r of Soc. Sec.*, No. 2:17-cv-48-FtM-CM, 2018 WL 1313118, *3-4 (M.D. Fla. Mar. 14, 2018), in which the physician applied for a *permanent* permit.

Given the compound nature of the preprinted certification, one is left to wonder whether the applicant needs a brace, cane, crutch, prosthetic device, some other assistive device, or the assistance of another person to ambulate. With the vocational implications indeterminate, such statements fail to serve as medical opinions for purposes of the regulatory framework, and an ALJ may disregard them. *See Cochran v. Kijakazi*, No. 2:21-cv-3-SMD, 2022 WL 4131094, at *5 (M.D. Ala. Sept. 12, 2022) (conclusory statements in pre-printed, disability-parking applications are correctly disregarded as immaterial); *Randolph v. Colvin*, No. 13-cv-242-JHP-PJC, 2014 WL 4930495, *8-9 (N.D. Okla. July 2, 2014), *adopted in pertinent part*, 2014 WL 4930547 (Oct. 1, 2014) (rejecting argument that handicapped-parking application constituted treating-physician-opinion evidence); *Wilson v. Colvin*, No. 13-cv-113-FHM, 2014 WL 357052, *3 (N.D. Okla. Jan. 31, 2014) (handicapped-parking application with box checked for "[c]annot walk 200 feet without stopping to rest" was not opinion evidence that ALJ was required to discuss); *Bryant v. Astrue*, No. 09-4159-RDR, 2010 WL 4628721, *3, 7 (D. Kan. Nov. 8, 2010) (handicapped-parking application with box checked for "severely limited in ability to walk at least 100 feet due to an arthritic, neurological, or orthopedic condition" was not "so probative as to require discussion").

Thus, the absence of any discussion by the ALJ about the application for a

state-issued, disabled-parking permit does not warrant remand.[13]

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was either no error or no harmful error in the ALJ's application of the correct legal standards. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on March 27, 2024.

NICHOLAS P. MIZELL
United States Magistrate Judge

---

[13] Notably, Frantz completed the application just twelve days before Donnellan presented for a pain-management treatment, during which it was noted that Donnellan did not use an assistive device. (Tr. 27, 1328).